PHILLIP MOORE *v.* GLENN INSURANCE, INC.

5-5437                                            462 S. W. 2d 456

Opinion delivered February 1, 1971

*Tiner & Henry,* for appellant.

*Henry S. Wilson,* for appellee.

J. Fred Jones, Justice. This is an appeal by Phillip Moore from a decree of the Poinsett County Chancery Court wherein Moore sought rescission of a contract and refund of amounts paid for the purchase of stock in the Glenn Insurance Company. Moore alleged failure of consideration as grounds for rescission. Glenn Insurance denied failure of consideration and alleged that stock certificates were delivered to Moore; that Moore returned the certificates with directions that the certificates be canceled and reissued to GlenMore Corporation, and that this was done. The chancellor, in effect, awarded specific performance. On appeal to this court Moore relies on the following point for reversal:

"It was error to refuse to rescind the contract and order restitution."

The record reveals that Phillip Moore was engaged, with his brothers Jake and Earl, in the business of farming under a family corporation designated "Moore Farms, Inc." The Moore brothers owned equal shares in the corporation. Glenn Insurance, Inc. apparently is a family insurance corporation, with the two brothers, Howard Glenn, Burl Glenn, and their father Paul Glenn as the incorporators and principal stock holders.

On December 1, 1966, Phillip purchased 6,000 shares of Glenn Insurance Company stock from that company and paid $6,000 for it. On June 29, 1967, he purchased 10,000 additional shares and executed a note for $10,000 to the First National Bank of Wynne in payment of the stock. The note was payable in three equal annual payments and the amount of the note was paid to Glenn Insurance Company for the stock. Phillip contends that the stock was never issued and delivered to him and that he is entitled to restitution of the amounts he paid therefor. He testified that he made numerous requests that stock certificates be issued to him but that no certificates were ever delivered to him. He says that his brother, Jake, transacted busine‑s for him on some occasions and that Jake and Howard Glenn (president of Glenn Ins., Inc.) told him that stock certificate No. 99 (for the 10,000 shares) was

pledged at the bank as additional security for payment of the note. He says that when the first 1968 annual installment on the note fell due, he refused to pay it because he had not received his stock. He says that the payment was made by someone and that the 1969 payment was made by Moore Farms, Inc. and charged back to him.

Forrest Smith testified that he was assistant secretary for Glenn Insurance Company when Phillip Moore purchased the stock, and that Jake Moore was secretary. He says that certificate No. 2, for 2,000 shares, was issued to Phillip Moore on January 23, 1967; that certificate No. 72, for 2,000 shares, was issued to Phillip Moore on January 23, 1967; and that certificate No. 99, for 6,667 shares, was issued to Phillip Moore on January 27, 1967. He testified that certificates Nos. 2 and 72 were kept in Philip Moore's personal file in the insurance company office; that these certificates were offered to Moore but he remarked "that if that was all they were just to keep them." Mr. Smith testified that he left the company in September, 1968, and that sometime after that date certificates Nos. 2, 72 and 99 (offered in evidence) were marked "void" on their face and that they had never been endorsed by Phillip Moore or anyone else. He testified that such procedure was usually followed when a certificate was canceled and the stock reissued under a new or different numbered certificate.

Burl Glenn testified to about the same facts as did Smith. He testified that when Phillip Moore demanded his stock at a board meeting, the two certificates in his file were shown and offered to him, and that he was advised that the other certificate (No. 99) was at the bank and that he could get it the following morning; that Moore replied if that was not all of it he didn't want it.

Jake Moore testified that he is associated with his brother, Phillip, in several business enterprises, including Moore Farms, Inc.; and that he was, until recently,

associated with Glenn Insurance as secretary with Howare Glenn as president. We gather from Jake's testimony that he and Howard Glenn, while secretary and president respectively of Glenn Insurance Company, formed a "holding" corporation named "GlenMore." Each of them put $500 into the GlenMore corporate treasury and issued to themselves five shares each of GlenMore stock. This stock was apparently cancelled and reissued or transferred, five shares to Moore Farms, Inc. and five shares to "Insurance Service" (apparently a corporate entity owned by the Glenns). The record is not clear as to the date, but in any event, about 147,000 shares of Glenn Insurance Company stock was either canceled and reissued; or in some manner, not clear to Jake Moore and not clear to us, transferred to GlenMore, Inc.

It is clear from the testimony that the stock in Glenn Insurance Company represented by the certificates originally issued to Phillip Moore, was transferred to GlenMore, Inc. by the simple process of writing "void" on the certificates as issued, and apparently reissuing certificates for the same number of shares to GlenMore, Inc. Jake Moore testified that he discussed this procedure with his brothers, including Phillip, and that he thought they "were in for it," until after the transactions were completed. He says that a suit is now pending between himself and Howard Glenn for the dissolution of GlenMore, Inc.; that Howard Glenn refuses to retransfer any of the Glenn Insurance Company stock out of GlenMore to the original holders unless and until his own original stock in Glenn Insurance Company is retransferred from GlenMore to him, and Jake Moore says that he is unwilling to make such transfer.

From the state of the record it is apparent that Jake Moore and Howard Glenn became lost, or certainly Jake became confused, in a maze of corporate transactions involving other people's stock and money as well as their own. He is vague and indefinite in his testimony and Howard did not testify. Their attorneys were apparently able to unravel the situation well enough to establish to the satisfaction of the chancellor,

through leading questions directed to Jake Moore, what happened to the stock in Glenn Insurance Company purchased by Phillip Moore.

There is nothing in the record concerning the solvency of Glenn Insurance Company or whether all of its authorized stock has ever been issued. The record is clear that Phillip Moore purchased $16,000 worth of stock in Glenn Insurance Company, and that three certificates, No. 2 for 2,000 shares; No. 72 for 2,000 shares, and No. 99 for 6,667 shares were issued to him but were never delivered into his actual possession. It is clear that these certificates were marked void and canceled before they came into his possession, and it is apparent that other certificates for this amount of stock were issued to GlenMore. There is no evidence that Phillip Moore ever directed or authorized anyone to cancel, transfer or reissue these stock certificates to Glen-More. The nearest the record comes to revealing such evidence is the testimony of Jake Moore, that he thought his brothers were "in for it." There is nothing in the record to distinguish between the acts of the various corporate entities and various acts of individuals; and there is nothing in the record to indicate that the officers of the corporate entities knew or recognized that there was or should be any difference.

The appellee insurance company set out in its answer that it stands ready and willing to reissue the stock at any time to Phillip Moore if directed to do so, and the chancellor decreed as follows:

"That the Defendant, Glenn Insurance, Inc., within five days issue and deliver to the Plaintiff, Phillip More, stock certificates showing ownership of the number of shares of capital stock as represented by said certificates numbers 2, 72 and 99."

Certainly we are unable to say that the decree of the chancellor is against the preponderance of the evidence.

The decree is affirmed.